## MALONEY, Collector of Internal Revenue, v. WESTERN COOPERAGE CO.

### No. 9032.

Circuit Court of Appeals, Ninth Circuit.
May 13, 1939.

James W. Morris, Asst. Atty. Gen., and Sewall Key, James P. Garland, and Clarence E. Dawson, Sp. Assts. to Atty. Gen., and Carl C. Donaugh, U. S. Atty., of Portland, Or., for appellant.

Charles E. McCulloch and Fletcher Rockwood, both of Portland, Or. (Carey, Hart, Spencer & McCulloch, of Portland, Or., of counsel), for appellee.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

Appellee brought suit against the Internal Revenue Collector to recover federal excise taxes assessed and collected under § 213 of the National Industrial Recovery Act, 48 Stat. 206. After a trial to the court on stipulated facts judgment was awarded in appellee's favor.

The National Industrial Recovery Act became effective June 16, 1933. § 213(a) imposed an excise tax of 5% upon the receipt of dividends by any person other than a domestic corporation, the tax to be withheld at the source. The section provides that the tax imposed "shall not apply to dividends declared before the date of the enactment of this act."

On January 16, 1933 appellee's board of directors at their annual meeting adopted a resolution reading as follows: "Re-

solved, that the Secretary and Treasurer of this Company be and he is hereby authorized, empowered and directed to pay monthly dividends of ½ of 1% each month for the year 1933 whenever in his judgment there are moneys available to pay the same and further that whenever in the judgment of said Secretary and Treasurer there are moneys available to increase the amount of said dividends for any month or months thereof, said Secretary and Treasurer is hereby authorized, empowered and directed to pay such additional dividends."

This resolution was identical in form with resolutions adopted in previous years, under which appellee had paid dividends of ½ of 1% each month during the period from January, 1925, to the end of 1932.

Appellee had common stock outstanding of the par value of $2,976,600. It paid dividends to the holders of this stock during 1933, from January to November inclusive, at the rate of ½ of 1% each month, and for December at the rate of 1%. There was no board authorization for the payment of these dividends other than the January resolution. Taxes were assessed on the dividends paid for the month of June and the ensuing months, and the suit against the collector is for the recovery of the amount paid pursuant to the assessment.[1]

During 1933 appellee's earned surplus available for the payment of dividends at all times exceeded $500,000, and at all times during that year it had earnings and profits accumulated subsequent to February 28, 1913, in excess of $300,000.[2] It was stipulated that throughout the year there was money available in the taxpayer's treasury to pay dividends on its common stock in amounts not less than ½ of 1% per month on all outstanding shares.

The trial court concluded that the resolution of January 16, 1933, created a debtor and creditor relationship between the taxpayer and its stockholders for the payment of dividends to the amount of ½ of 1% per month throughout the year, and that the Commissioner had improperly disallowed the taxpayer's claim for refund. Judgment was entered accordingly.

■ The Bureau of Internal Revenue has ruled (I.T. 2744, XII-2 Cumulative Bulletin 402) that: "Following the established rule of construction the expression 'dividends declared' as used in the statute is to be construed and applied according to its accepted legal meaning. Stated briefly, the declaration of a dividend by the board of directors of a corporation has the legal effect of creating the relationship of debtor and creditor between the corporation and the stockholder, and the rights of the stockholder as such creditor become immediately vested regardless of the fact that the dividend may be payable at some future time. In order for a dividend to be fully 'declared' within the meaning of the statute the action taken by the board of directors must be such as to create the relationship of debtor and creditor between the corporation and the stockholder, and the debt so created must be a legal and enforceable debt which is definite, final, and irrevocable. A dividend so declared of course effects an appropriation of surplus to the payment of the debt created."

This ruling is merely declaratory of a generally accepted principle, and the parties are in agreement that it affords the proper test to be applied here. As said by this court in United States v. Southwestern Portland Cement Co., 9 Cir., 97 F.2d 413, 415, a declaration of dividend which does not create "a definite, final, irrevocable and enforceable debt against the corporation in favor of the stockholders is not a fully declared dividend."

■ The authority or direction of appellee's board to pay these dividends, given to its Secretary-Treasurer, was subject to the qualification that they were to be paid whenever in the judgment of that officer there were monies available to pay them. It is appellee's contention that the dividends were payable at all events, and that the officer was vested with a mere discretion as to the time of payment. Appellant's position is that the qualifying clause is a reservation of the power to omit payment.

The directors were cognizant of the financial condition of the company. They must, therefore, necessarily be held to have had a purpose in imposing this qualification; and it seems reasonable to suppose that the purpose was to guard against unforeseen contingencies the occurrence of

---

[1] The taxpayer concedes and the lower court held that the dividends paid in December in excess of ½ of 1% were taxable.

[2] Total dividends paid for the year on the common stock were $193,479, of which $119,064 was paid after the effective date of the taxing statute.

which would make it inadvisable, in the judgment of a responsible officer, to pay any one or all of the monthly dividends. If the words "in his judgment" had been left out of the resolution, and the clause had read "whenever there are monies available to pay the same", it might fairly be said that the officer would have had no more than a discretion as to the time of payment. Compare Thompson Manufacturing Co. v. United States, 22 F.Supp. 830, Ct.Cl. But as the resolution stands. his judgment is absolute. The question of the availability of funds is left to his sole discretion.

It is not enough that the books reflect earned surplus or that there are monies in the corporate treasury from which dividends might be paid. The officer may decide, and it was the purpose of the resolution that he should have the power of deciding, in the light of changing conditions, whether such funds should be used in the payment of dividends or whether they should be devoted to the building up of further surplus, or diverted to other purposes of then seeming advantage to the corporation. Stockholders or others might disagree with the officer, but the decision is not theirs to make. Certainly, the corporate board did not intend a situation where the discretion of a court might, at the behest of stockholders, be substituted for that of its own responsible agent.

█ It is plain from the resolution that the board delegated to the Secretary-Treasurer no mere clerical or ministerial authority, since he was authorized to increase the amount of the dividends for any month in his discretion. The judgment to be exercised by him in this respect was of the same quality as that to be displayed in determining whether the dividends of $\frac{1}{2}$ of 1% per month should be paid. In substance and effect he was given authority, in the exercise of his considered judgment, to declare the dividends from month to month and to determine their amount. In a sense the dividends paid were no more than a division of profits in the nature of a constructive dividend declared as of the time of payment. Smith v. Moore, 9 Cir.,

199 F. 689; Spencer v. Lowe, 8 Cir., 198 F. 961.

██ The burden of proof was on appellee. There is no finding or stipulation that, prior to June 16, 1933, any funds were segregated or set aside for the payment of future dividends, or that any announcement had been made by the officer that dividends would subsequently be paid. There is thus no showing of the forward exercise of the officer's judgment. The fact that the dividends were actually paid is of no moment. The sole question is whether the resolution without more created a definite and enforceable debt against the corporation in favor of the stockholders. We think the question must be answered in the negative.

The problem has had consideration in a number of cases. The facts involved in those cases and the form of the supposed declarations vary greatly. Inasmuch as the principle to be applied is well understood and since each case must be determined on its own facts, a review of the authorities would serve only to lengthen the opinion. In United States v. Murine Co., 7 Cir., 90 F.2d 549; Carney v. Crocker, 1 Cir., 94 F.2d 914; and United States v. Southwestern Portland Cement Co., supra, resolutions containing qualifying clauses similar to the one here were held insufficient declarations to exempt the dividends subsequently paid from taxation under the act. The decisions in Evening Star Newspaper Co. v. United States, 16 F.Supp. 1020, Ct.Cl., and Alabama Pipe Co. v. United States, 21 F.Supp. 173, Ct.Cl., are clearly distinguishable on their facts. Other decisions relied on by appellee include Northwestern Marble & Tile Co. v. Carlson, 116 Minn. 438, 133 N.W. 1014, Ann. Cas.1913B, 522; Wallin v. Johnson City Lumber & Mfg. Co., 136 Tenn. 124, 188 S. W. 577, L.R.A.1917B, 323, and Beers v. Bridgeport Spring Co., 42 Conn. 17. The holdings in these latter cases are somewhat extreme, but they may also be distinguishable.

Judgment reversed.

MATHEWS, Circuit Judge, dissents.